UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHMUEL KLEIN,<br><br>                    Plaintiff,<br><br>     -against-<br><br>THOMAS P. ZUGABIE, in his official capacity as ROCKLAND COUNTY DISTRICT ATTORNEY, UNITED PARCEL SERVICE, INC., DAVID P. ABNEY, RICHARD SMITH, GEORGE KELLIN, D. SCOTT DAVIS, DEMEZA DELHOMME, in his official capacity as Mayor of the Village of Spring Valley, PAUL MODICA, in his official capacity as a Police Chief for the Village of Spring Valley Police Department, Police Officer JOHN BELTEMPO, individually and in his official capacity as a Police Officer for the Village of Spring Valley Police Department, and Police Officer LOUIS SCORZIELLO, individually and in his official capacity as a Police Officer of the Village of Spring Valley Police Department, JOHN DOE, and JANE ROE, and XYZ,<br><br>                    Defendants. | No. 15 Civ. 9093 (NSR)<br><br>OPINION & ORDER |

NELSON S. ROMÁN, United States District Judge

Plaintiff Shmuel Klein, proceeding *pro se*, initiated this fee-paid action pursuant to 42 U.S.C. § 1983, the New York State Constitution, and New York common law against Rockland County District Attorney Thomas P. Zugabie ("District Attorney Zugabie"); Mayor Demeza Delhomme of the Village of Spring Valley ("Mayor Delhomme"), Police Chief Paul Modica of the Village of Spring Valley Police Department ("Chief Modica"), Spring Valley Police Department Officers John Beltempo ("Officer Beltempo") and Louis Scorziello ("Officer

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1 24 2017

Scorziello") (the "Spring Valley Defendants," collectively); the United Parcel Service, Inc.

("UPS"), and UPS current and former employees David P. Abney, Richard Smith, George

Kellin, and D. Scott Davis (the "UPS Defendants," collectively), alleging claims of false arrest,

detention and confinement, excessive force, assault, battery, intentional infliction of emotional

distress, negligence, failing to provide due process, malicious prosecution, abuse of process,

refusing or neglecting to prevent the alleged violations, and conspiracy to commit the alleged

violations in derogation of his federal and state constitutional rights.  Defendants have moved to

dismiss the complaint pursuant to either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) on

various and alternative grounds, including that the action is procedurally barred by *res judicata*

or that the causes of action alleged in the complaint are time-barred by the applicable statutes of

limitations and fail to state a claim.  For the following reasons, Defendants' motions are

GRANTED IN PART and DENIED IN PART.

BACKGROUND[1]

Plaintiff's allegations in this action concern the same set of events at issue in his prior *pro*

*se* litigation, *Klein v. United Parcel Service, et al.*, No. 11 Civ. 2044 (Ramos, J.) (S.D.N.Y.)

("*Klein I*"), which was dismissed on procedural grounds.  (*Compare* Compl. at 1, ECF No. 1,

*with* Compl. at 1-2, *Klein I* (No. 11 Civ. 2044, ECF No. 1).)  To better understand the posture of

the current action, the Court takes judicial notice of Plaintiff's filings in the prior litigation and

his state court criminal proceedings, both of which are referenced in his current complaint.

(Compl. ¶¶21-23); *see Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

---

[1] The Court assumes the truth of the facts alleged in Plaintiff's complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), unless directly contradicted by documents filed in other court proceedings of which the Court takes judicial notice.  *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995).

I.      **Plaintiff's Allegations**

Plaintiff is the trustee for SK Trust, which owns property at 268 Route 59 in Spring

Valley, New York.  (Compl. ¶ 10.)  During the years 2006 through 2007, SK Trust rented a room

at 268 Route 59 to Israel Kraus, an individual doing business as EZP Labels.  (*Id.* ¶ 11.)  But,

when EZP failed to make monthly rent payments in late 2006, Plaintiff began an eviction

proceeding.  (*Id.* ¶ 11.)  On May 9, 2007, SK Trust was granted a warrant of eviction and

awarded a judgment of $4,216.00 against EZP.  (*Id.* ¶ 12.)  EZP vacated the premises, but never

satisfied the judgment.  (*Id*. ¶ 12.)

In early 2010, Defendant UPS delivered a package[2] to 268 Route 59 for Israel Kraus and

EZP Labels.  (*Id.* ¶ 13.)  When Plaintiff's secretary told him that the package had been delivered

for Israel Kraus and EZP Labels, which was the first time he had heard of the delivery, Plaintiff

directed his staff to call Kraus to let him know the package had arrived.  (*Id.*)  Kraus came to

Plaintiff's office, at which point Plaintiff's staff demanded payment of the outstanding judgment.

(*Id.*)  Kraus told Plaintiff's staff he would return with payment and would pick up the package

then.  (*Id.*)  Kraus apparently did not return.

Instead, a short time later, a UPS delivery employee came to Plaintiff's office and

requested the package.  (*Id.* ¶ 14.)  Plaintiff told the UPS employee he had a possessory lien on

the package until the judgment was satisfied.  (*Id.*)  The UPS employee left without the package.

(*Id.*)  About a week later, UPS sent another employee, Defendant Richard Smith, who again

asked Plaintiff for the package.  (*Id.* ¶¶ 15-16.)  P    laintiff told Smith he had a lien on the

---

[2]  Plaintiff refers to the package or packages as "package(s)" throughout the complaint.  (*See, e.g.*, Compl.
¶¶ 13-15.)  Although the number of parcels delivered is unknown, the Court will, for ease of reference, simplify the
allegations and refer to a single package.

package, and Smith left without the package. (*Id.*)  Smith appears to have come again to request the package with the same result. (*Id.*)

On March 24, 2010, after UPS filed a criminal complaint against Plaintiff with the Village of Spring Valley Police Department, Defendant Police Officer Beltempo, accompanied by Smith and a retired police officer,[3] entered 268 Route 59 and demanded the package. (*Id.* ¶ 17.)  Officer Beltempo had no arrest or search warrant, and Plaintiff explained to him that SK Trust had a possessory lien on the package until the outstanding judgment was satisfied. (*Id.*)

In response, Officer Beltempo screamed at Plaintiff, shook his fist, and yelled, "Give me th[at] package[]." (*Id.*)  Plaintiff calmly repeated his assertion of the lien and said this was a civil, not a criminal, matter. (*Id.*)  Officer Beltempo declined Plaintiff's offer to go to Justice Court to allow a judge to determine whether Plaintiff had a valid lien. (*Id.*)  Instead, Officer Beltempo twisted Plaintiff's arms behind his back and handcuffed him, assaulting and battering Plaintiff in front of his 77 year-old mother. (*Id.* ¶ 18-19.)  At that point, Plaintiff offered the officers the package, but Officer Beltempo told Plaintiff it was "too late." (*Id.* ¶ 19.)

Plaintiff asserts there was "*no basis*" for his arrest and that Officer Beltempo did not provide a justification. (*Id.* ¶ 30, ¶ 64.)  Officer Beltempo placed Plaintiff in the back of a police car. (*Id.*)  He then handed the sealed and unopened package to the UPS employee, Defendant Smith, who had encouraged the officers' activities during the altercation. (*Id.* ¶¶ 17, 19.)

The police transported Plaintiff to the Spring Valley police station, where police searched, finger printed, photographed, and handcuffed Plaintiff to a bench in a holding cell. (*Id.*)  He was released several hours later and told to walk back to his office. (*Id.*)  Later, the

---

[3]  It is unclear from the complaint whether Richard Smith is alleged to be a retired Spring Valley Police Officer, or whether another officer accompanied Officer Beltempo. (*Compare* Compl. ¶ 17, *with id.* ¶ 19.)  The Court will assume there were at least two officers, one of which may be the John Doe Defendant or Officer Scorziello—who Plaintiff alleges, albeit only in his causes of action, took part in the arrest. (*Id.* ¶¶ 37-38, 71.)

Defendant Rockland County District Attorney charged Plaintiff with felony larceny and resisting arrest.  (*Id.* ¶ 20)  After he was arraigned on these charges, and after several court hearings, the District Attorney reduced the charges to petit larceny and resisting arrest.  (*Id.*)  Plaintiff asserts he never "attempt[ed] to resist arrest or offer violence" against the officers.  (*Id.* ¶ 33.)

Shortly after Plaintiff was convicted,[4] he filed his prior civil lawsuit in this Court.  (*See id.* ¶ 21); *see* Compl., *Klein I* (No. 11 Civ. 2044).  He also appealed his conviction.  (*Id.*)

Plaintiff claims UPS and its employees "played an active part in the initiation of the criminal proceedings" to "gain advantage" in recovering the package.  (*Id.* ¶ 71(a), ¶ 77.)  Moreover, he claims Richard Smith and George Kellin "recklessly made categorical statements to [sic] accusing [him] of violating the law" and "press[ed] police to arrest" him.  (*Id.* ¶ 72(c-d).)  These acts were part of an alleged conspiracy against Plaintiff on the part of UPS, the District Attorney, and the Officers.  In furtherance of that conspiracy, Jane Doe, an Assistant District Attorney, "advis[ed] the police officers how to arrest Plaintiff without cause or justification[.]"  (*Id.* ¶ 71(b).)  The officers "ulterior motive" for participating in the plot and "essentially doing the bidding of Defendant UPS" was "personal financial benefit," ostensibly realized after arresting Plaintiff and charging him.  (*Id.* ¶ 36.)

---

[4]  Plaintiff alleges the civil suit, initiated by a complaint dated March 21, 2011, was filed "during the criminal proceedings" and "while the criminal proceedings continued," but the decision in his criminal appeal lists the date of the judgment of his conviction as March 11, 2011.  *See People v. Klein*, No. 2012-1424, 42 Misc.3d 141(A), at *1 (Sup. Ct. App. Term. 2d Dep't Feb. 6, 2014).  Therefore, Plaintiff's allegations referring to the "proceedings" will be interpreted as relating to his appeal of the conviction.

## II.      Prior Litigation: *Klein I*

Plaintiff's prior action, based on similar allegations against the UPS Defendants[5] and the Spring Valley Defendants,[6] was filed on March 24, 2011.  Compl., *Klein I* (No. 11 Civ. 2044). The Court issued a summons the same day allowing Plaintiff to serve the Defendants.  *See Klein I*, 2014 WL 4637493, at *1 (S.D.N.Y. Sept. 17, 2014) (providing an overview of the procedural dismissal of Plaintiff's prior litigation).  During the next eleven months, however, Plaintiff did not effectuate service or communicate with the Court.  *Id.*  On February 6, 2012, the Court (Ramos, J.) gave Plaintiff thirty days to file proof of service or provide a justification for an extension of time to serve.  *Id.*  Plaintiff did not respond.  *Id.*  On March 27, 2012, the Court dismissed the action without prejudice for failure to serve the Defendants under the period of time prescribed by Federal Rule of Civil Procedure 4(m).  *Id.* (at that time, 120 days).

## III.     Plaintiff's Criminal Conviction

On February 6, 2014, a New York state appellate court reversed Plaintiff's convictions for resisting arrest and petit larceny.  (Compl. ¶ 21); *People v. Klein*, No. 2012-1424, 42 Misc.3d 141(A) (Sup. Ct. App. Term. 2d Dep't Feb. 6, 2014).  The court reversed the petit larceny conviction on technical grounds due to the failure to convert the felony complaint in Plaintiff's state court criminal proceedings to an information as required by New York's Criminal Procedure Law when "[a] charge is 'reduced' from a felony to a non-felony offense[.]"  *See Klein*, 42 Misc.3d 141(A), at *1; N.Y. C.P.L. § 180.50(3)(a)(iii).  In contrast, the court found the "information charging defendant with resisting arrest . . . failed to allege facts sufficient to

---

[5]  Plaintiff's prior complaint did not include Defendant Abney, the current CEO of UPS.  (*See* UPS Mem. at 1 n.2, ECF No. 41.)  It also named Defendant Kellin as "Kellinger."  Defendant UPS indicates it believes the proper named defendant would be "Kellinger."  (*See* UPS Mem. at 1 n.3.)  Otherwise, the UPS Defendants are the same between the two complaints.

[6]  Plaintiff's new complaint is updated to reflect the current mayor of the Village of Spring Valley.

establish, if true, the lawfulness of the arrest, i.e., *that 'the arrest was premised on probable cause*,'" and dismissed that charge.  *Klein*, 42 Misc.3d 141(A), at *1 (citations omitted and emphasis added).  After the case was remanded, Plaintiff alleges that "[a]fter nearly six months"—or sometime around August 2014—the District Attorney dropped the pending larceny charge.  (*See* Compl ¶ 21.)

## IV.     Plaintiff's Request to Reopen *Klein I*

On September 3, 2014, Plaintiff asked the Court to reopen his prior action.  (Compl. ¶ 22); Letter Request, *Klein I* (No. 11 Civ. 2044, ECF No. 8).[7]  Judge Ramos construed this request as a motion for relief from the final judgment entered on March 27, 2012 that dismissed *Klein I* without prejudice pursuant to Rule 4(m).  *See* Fed. R. Civ. P. 60(b); *Klein I*, 2014 WL 4637493, at *1.  The Court denied the motion based on "Plaintiff's failure to effect service, request an extension from the Court[,] or pursue his claims," as well as the "significant duration" of his "dilatory conduct," for which Plaintiff had not shown "good cause" or "extraordinary circumstances" warranting relief from the dismissal.  *Klein I*, 2014 WL 4637493, at *2-3 (noting that, by the text of Rule 60(c)(1), Plaintiff's more than three-year delay in seeking such relief foreclosed all potential avenues except for Rule 60(b)(6)).  The Court also indicated that the analysis would be the same if the dismissal was considered under Rule 41(b).  *Id.* at *3 n.4.

On August 25, 2015, the Second Circuit issued a summary order affirming that decision.  (Compl. ¶ 23); *Klein v. Smith et al.*, 613 F. App'x 86 (2d Cir. 2015) (the "court did not exceed its allowable discretion in denying Klein's Rule 60(b) motion for the reasons stated in its well-reasoned and thorough opinion and order").

---

[7]  Plaintiff's letter request explicitly states that "*[a]fter* filing the case, the District Attorney prosecuted [] Plaintiff [] and obtained convictions," which is "why the summons and complaints were not timely served."  Letter Request, *Klein I* (No. 11 Civ. 2044, ECF No. 8) (emphasis added).  As noted, *supra*, at n.4, this conflicts with the date of conviction listed in the state appellate court's decision.

**V.      Procedural History**

On November 19, 2015, Plaintiff proceeding *pro se* commenced this action by filing the current complaint against generally the same UPS and Spring Valley Defendants, along with the addition of the Rockland County District Attorney.  (Compl., ECF No. 1.)  Defendants' motions to dismiss were fully submitted as of June 14, 2016.  (ECF Nos. 26, 30, 39.)

## STANDARD ON A MOTION TO DISMISS

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.  To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense."  *Id*. at 662.  A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.

## DISCUSSION

Defendants have articulated various grounds for dismissing Plaintiff's action, including *res judicata*, the applicable statutes of limitations, and that the allegations in the complaint fail to state a claim for which relief can be granted. Although a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Plaintiff, an attorney formerly licensed in New York, "clearly underst[ands] the consequences" of legal proceedings and is not afforded the generous latitude usually provided to *pro se* litigants. *In re Klein*, 102 A.D.3d 215 (2d Dep't 2012); *Schafler v. Summer*, 63 F. App'x 581, 584 (2d Cir. 2003); *cf. Wightman-Cervantes v. Mueller*, 750 F. Supp. 2d 76, 80 (D.D.C. 2010) ("a disbarred attorney . . . is presumed to have a knowledge of the legal system and need[s] less protections from the court") (internal citations and quotations omitted).

## I.     Res Judicata

The doctrine of *res judicata*, or claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from litigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The UPS Defendants are incorrect that the dismissal of Plaintiff's complaint in *Klein I* has a *res judicata* effect on this action. (UPS Mem. at 14-15, ECF No. 41); *see Gomez v. City of New York*, No. 14 Civ. 5932 (CM), 2016 WL 5115499, at *6 (S.D.N.Y. Sept. 16, 2016) (comparing the *res judicata* effect of a dismissal on statute of limitations grounds—considered a judgment on the merits— with the non-prejudicial effect of a dismissal under Rule 4(m), which does not have the corresponding *res judicata* effect). The Rule 4(m) dismissal without prejudice was not on the merits. *See* Order of Dismissal, *Klein I* (11 Civ. 2044, ECF No. 6). Moreover, the only issues decided in *Klein I*, either when the action was dismissed or when Plaintiff's request to reopen the

action was denied, were procedural: Plaintiff failed to serve Defendants within the requisite period of time, Plaintiff did not communicate with the Court regarding the litigation, and Plaintiff failed to justify his neglect of the action.  Therefore, Plaintiff's current claims are not precluded by *Klein I*, and the Court turns to the question of whether Plaintiff's causes of action are time-barred.

## II.   Timeliness of Plaintiff's Claims

Plaintiff asserts both federal and state law claims.  His claims alleging violations of his federal constitutional rights are brought pursuant to 42 U.S.C. § 1983.  His state law claims are brought either under the New York State Constitution or pursuant to New York common law. Defendants contend that these claims are largely time-barred.

### a.   Section 1983 claims

Section 1983 claims are subject to a three-year statute of limitations in New York. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015).  Since Plaintiff commenced this action on November 19, 2015, his § 1983 claims are time-barred unless (1) they accrued after November 18, 2012, or (2) the statute of limitations was tolled.

### i.   Accrual

"Not every § 1983 claim that arises out of a criminal case requires that the underlying criminal process reach a favorable termination" before the claim accrues.  *Smith v. Campbell*, 782 F.3d 93, 101 (2d Cir. 2015).  Rather, most causes of action for violations of Section 1983 accrue at that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action.  *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980); *see also Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015).  Such is the case for Plaintiff's § 1983

claims for false arrest and imprisonment, as well as his claims for unreasonable seizure, excessive force, refusal or neglect in preventing these violations, violations of his due process rights,[8] and conspiracy to commit these violations. *See, e.g.*, *Dancy v. McGinley*, 843 F.3d 93, 111 (2d Cir. 2016) (quoting *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006)) ("A cause of action for false arrest 'accrues at the time of detention.'"); *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) (quoting *Wallace v. Kato*, 549 U.S. 384, 388-89 (2007)) (false imprisonment claim accrues at arraignment, after the alleged false arrest and imprisonment, rather than upon release from confinement).

Indeed, "[a]ll of Plaintiff's alleged injuries (other than malicious prosecution) occurred prior to, or in the course of, his trial," meaning that "he was clearly aware of them by the time of his conviction." *Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 563-64 (S.D.N.Y. 2012). The claims, thus, accrued on or after March 24, 2010, but at the latest by March 11, 2011—the date he was convicted. *See People v. Klein*, 42 Misc.3d 141(A), at *1. These claims are time-barred unless the limitations period was tolled.

In contrast, "in New York, '[m]alicious prosecution suits require, as an element of the offense, the termination of the proceeding in favor of the accused . . . [and] the tort cannot stand unless the underlying criminal cases finally end in failure." *Smith v. Campbell*, 782 F.3d 93, 100-101 (2d Cir. 2015) (quoting *Poventud v. City of New York*, 750 F.3d 121, 130-31 (2d Cir. 2014) (en banc) (citations and internal marks omitted in original)). Plaintiff's Fourth Amendment tort of malicious prosecution, therefore, did not accrue "until after the trial and appeal" of his convictions. *See Smith*, 782 F.3d at 101. This means that the claims accrued on or

---

[8] Plaintiff's general "due process" claims are either duplicative of his Fourth Amendment claims or improper to the extent asserted under the Fifth Amendment. *See Maliha v. Faluotico*, 286 F. App'x 742, 744 (2d Cir. 2008) (due process claims merge with Fourth Amendment claims); *Amato v. Hartnett*, 936 F. Supp. 2d 416, 436 n.10 (S.D.N.Y. 2013) ("the Fifth Amendment only applies to claims against the federal government").

after the appellate court reversed the convictions on February 6, 2014.  Whether the accrual occurred when the convictions were reversed—and the resisting arrest charge dismissed—or after the Defendant District Attorney dropped the remaining larceny charge is of little consequence.  The malicious prosecution claim under § 1983 is timely.

### ii.  Tolling

Plaintiff's arguments that the limitation period for these claims can be tolled is incorrect. (Pl. Mem. at 7-12, ECF No. 38.)  The dismissal of *Klein I*, which as explained above does not have a *res judicata* effect, does however significantly inform the analysis of whether Plaintiff is entitled to equitable tolling of his claims.  "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'"  *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 755, 756 n.2 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)) (noting that the Court has never decided if equitable tolling under *Holland* is applicable outside of the *habeas* context). This relief is available "only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control."  *Id.* at 756 (emphasis in original).

*Klein I* was dismissed without prejudice before the statute of limitations had run on Plaintiff's § 1983 claims—but that dismissal has now effectively become with prejudice given the time that has elapsed.  Where "the dismissal without prejudice in combination with the statute of limitations would result in a dismissal *with* prejudice," a Rule 4(m) dismissal is still appropriate in cases where the Court considered the impact of this outcome and found no excuse for the failure to serve the defendants within the allotted time.  *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007); *see, e.g.*, *Ocasio v. Fashion Inst. of Tech.*, 86 F. Supp. 2d 371, 376

(S.D.N.Y. 2000), *aff'd*, 9 F. App'x 66 (2d Cir. 2001) ("dismissal is proper under Rule 4(m),

'even if it occurs after the expiration of the applicable statute of limitations period, and its effect

is to bar the plaintiff's claim.'") (citations omitted); s*ee also Harper v. City of N.Y.*, 424 F. App'x

36, 41 (2d Cir. 2011) (quoting *Zapata*, 502 F.3d at 198) ("*Zapata* 'leave[s] to the district courts

to decide on the facts of each case how to weigh the prejudice to the defendant that arises from

the necessity of defending an action after both the original service period and the statute of

limitations have passed before service.'").

Since the limitations period had not run, the Court confined its analysis to Plaintiff's

complete lack of responsiveness when it dismissed *Klein I.* 2014 WL 4637493, at \*1. It was

Plaintiff who waited until after the statute had run to request that the Court re-open the action.

*Id.* In considering Plaintiff's request, the Court found "Plaintiff's failure to effect service,

request an extension from the Court[,] or pursue his claims" to be "inexplicable"—and that

"Plaintiff's delay in seeking to reopen the case for three and one-half years—from March 2011

to September 2014—[was] of significant duration." *Id.* at \*2-3. Thus, Plaintiff failed to show

"good cause" or "extraordinary circumstances" warranting relief from the dismissal. *Id.* Those

conclusions equally govern the availability of equitable tolling now.

"Equitable tolling protects litigants who are incapable of looking out for their affairs, but

the standard for invoking the toll is very high indeed." *Gomez*, 2016 WL 5115499, at \*7.

Plaintiff's argument that the criminal proceedings may have mooted the action does not rise

above that high threshold. Rather, his negligence in prosecuting the action—or requesting a stay

from the Court while his appeal progressed—are ordinary circumstances that were within his

control. Therefore, he is not entitled to have the limitation periods tolled. Furthermore, the

invocation of the doctrine of equitable estoppel requires that "the plaintiff was induced by fraud,

misrepresentations or deception to refrain from filing a timely action," *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007), and Plaintiff has made no allegations of such conditions to demonstrate his entitlement to relief.[9]

### b. State law claims

Initially, Plaintiff's claims under the New York State Constitution are governed by the same limitations period and therefore largely barred. *423 S. Salina St., Inc. v. City of Syracuse*, 68 N.Y.2d 474, 482 (1986). These claims are also barred where alternative remedies are available under § 1983 or state common law. *Allen v. Antal*, No. 15-3252-CV, --- F. App'x ----, 2016 WL 7234682, at *2 (2d Cir. Jan. 14, 2016).

Moreover, the state common law claims against the Defendant District Attorney and the Spring Valley Defendants have a shorter statute of limitations period than the § 1983 claims: one year and ninety days. *See Allen v. Antal*, No. 12 Civ. 8024, 2014 WL 2526977, at *14 (S.D.N.Y. Mar. 13, 2014), *aff'd*, 2016 WL 7234682 (2d Cir.). Thus, the claims that were untimely under § 1983 are even more so under state law. And, contrary to his assertion (*see* Pl. Mem. at 9), Plaintiff cannot rely on New York C.P.L.R. § 205 to save these untimely claims because it does not apply in cases where the initial action was dismissed as a result of "a failure to obtain personal jurisdiction over the defendant[s]," which is exactly what happened when Plaintiff failed to serve the Defendants in *Klein I*.

Furthermore, his state law tort claims required him to file a notice of claim within ninety days of the accrual of the action. N.Y. Gen. Mun. Law § 50-e(1). "A late notice of claim served

---

[9] Any argument by Plaintiff that the principles of relation back apply to save this action are spurious. *See Atakulu v. Maryland Dep't of Human Res.*, No. 14 Civ. 0904 (GJH), 2014 WL 2927772, at *7 (D. Md. June 26, 2014) ("a complaint in one case may not relate back to a complaint in another case to avoid the statute of limitations") (citation omitted); *Girau v. Europower, Inc.*, 317 F.R.D. 414, 419-20 (S.D.N.Y. 2016) (providing an overview of the application of the relation-back doctrine).

without leave of the court is a nullity." *Tyk v. Police Officer Eric Surat*, No. 15-3813, --- Fed. App'x ----, 2017 WL 129145, at *2 (2d Cir. Jan. 12, 2017) (quoting *Chtchannikova v. City of New York*, 138 A.D.3d 908, 909 (2d Dep't 2016)); *see also In re Dayton*, 786 F. Supp. 2d 809, 824-25 (S.D.N.Y. 2011) (holding that it is unclear whether a federal court even has jurisdiction to extend the time to file a notice of claim, but that in any event, an extension cannot exceed the one year and ninety day statute of limitations).  Plaintiff did not file his notice of claim with Rockland County until February 24, 2015.  (*See* District Attorney Aff., Ex. B, ECF No. 27.)[10] Even using the starting point of September 3, 2014—when he requested the Court re-open his prior proceeding after his convictions were reversed and the remaining charge dropped— Plaintiff's notice of claim was not timely.  *Hardy v. N.Y. City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) ("Notice of claim requirements 'are construed strictly by New York state courts.'") (citations omitted).  Therefore, the remaining state common law claim for malicious prosecution must also be dismissed against the Defendant District Attorney.  Similarly, the previous notice of claim filed with the Village of Spring Valley[11] does not list malicious prosecution as one of the tort claims asserted and this claim must be dismissed against the Spring Valley Defendants for that reason.  *Finke v. City of Glen Cove*, 55 A.D.3d 785, 786 (2d Dep't 2008) ("[c]auses of action for which a notice of claim is required which are not listed in the plaintiff's original notice of claim may not be interposed").

---

[10]  On this issue, the Court finds "it is unnecessary to convert this motion to dismiss into a motion for summary judgment" in order to consider Plaintiff's notices of claim.  *See Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F. Supp. 2d 115, 124 (W.D.N.Y. 2010).  Plaintiff references his notices of claims in his complaint. Defendant District Attorney provided Plaintiff with notice of its intention to introduce evidence of the actual notice against the County.  (ECF No. 34 (dated Mar. 18, 2016).)  Plaintiff did not contest the date of that notice of claim in opposition.  (Pl. Mem. at 7; Pl. Aff. at ¶ 14, ECF No. 37.)

[11]  For the same reasons, *see supra*, n.10, the Court considers Plaintiff's prior notice of claim.  (*See* Spring Valley Aff., Ex. B, ECF No. 31.)

### III.    Plaintiff's § 1983 Malicious Prosecution Claim

Plaintiff's federal claims for malicious prosecution—and any related allegations of conspiracy to effectuate that prosecution—arising out of the March 24, 2010 arrest and March 11, 2011 convictions are his only timely claims.  *See, e.g.*, *Gomez*, 2016 WL 5115499, at *8; *Palmer v. City of New York*, 315 F. App'x 350 (2d Cir. 2009).[12]  To prevail on a claim for malicious prosecution, "a plaintiff is required to demonstrate: (i) the commencement or continuation of a criminal proceeding against her; (ii) the termination of the proceeding in her favor; (iii) 'that there was no probable cause for the proceeding'; and (iv) 'that the proceeding was instituted with malice.'"  *Mitchell v. City of N.Y.*, 841 F.3d 72, 79 (2d Cir. 2016) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)).  Unfortunately, whatever the potential merit of this claim, several infirmities compromise its viability.

First, because the Defendant District Attorney is sued in his official capacity, sovereign immunity bars Plaintiff's claim.  *Allah v. City of N.Y.*, No. 15 Civ. 6852 (CBA) (LB), 2016 WL 676394, at *4 (E.D.N.Y. Feb. 17, 2016); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) ("When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county.") (internal quotation marks and citation omitted).[13]  Second, on the basis of the allegations contained in the complaint,

---

[12]  The Court notes that to the extent Plaintiff is alleging a § 1985 conspiracy, he fails to allege any facts showing he was treated differently due to his membership in a protected class.  *See Allen*, No. 12 Civ. 8024, 2014 WL 2526977, at *9.  Further, Plaintiff's attempts to allege liability under the doctrine of *respondeat superior* fail, as § 1983 does not impose liability on that basis.  *Id.* at *6; *Hicks v. City of Buffalo*, 124 F. App'x 20, 22-23 (2d Cir. 2004) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978)).  Finally, any arguable *Monell* claims must be dismissed because they would also be untimely.  *Cf. Birch v. City of N.Y.*, No. 16-1746, --- Fed. App'x ----, 2017 WL 129148, at *2 (2d Cir. Jan. 12, 2017) ("a cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a [municipality's] 'policy or custom.'").  On the basis of Plaintiff's bare allegations, it is unclear why he alleges that a policy or custom exists, but whatever his view of the policy may be it would have been apparent to him by the time he was convicted.  *Allen*, 2014 WL 2526977, at *6-7.

[13]  On the other hand, if there were sufficient allegations pleaded establishing the Jane Doe Assistant District Attorney's participation in the malicious prosecution of Plaintiff, then she would not be entitled to absolute

and drawing all inferences in favor of Plaintiff, the UPS Defendants simply reported a potential crime to the police and had no personal involvement in any of the activities that followed.  They cannot be liable for malicious prosecution based on those allegations.[14]  Finally, with regard to the Spring Valley Defendants, because Plaintiff does not allege any personal involvement on the part of Mayor Delhomme or Chief Modica, his claims against them fail as a matter of law.  *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

Turning to the remaining Defendants, Officers Beltempo and Scorziello,[15] Plaintiff's pleading with regard to the larceny prosecution is similarly deficient as a matter of law.  Plaintiff does not cite any authority for the validity of his "possessory lien" over the parcels, and his complaint notes that rather than provide proof of his "lien" on the package, he offered to take the Officers to court to determine the propriety of his asserted lien.  Based on the allegations provided, Defendants are correct that the "officers, at the very least, had probable cause to arrest him for larceny" after he withheld the package.  (Spring Valley Mem. at 9, ECF No. 32.) Because the lack of probable cause is one of the elements necessary to support a claim for malicious prosecution, this claim as it relates to the larceny arrest and prosecution must also be dismissed.  *Abreu v. Romero*, 466 F. App'x 24, 26 (2d Cir. 2012) (citing *Jaegly v. Couch*, 439

---

immunity if sued in her individual capacity.  *See Carbajal v. Cty. of Nassau*, 271 F. Supp. 2d 415, 421 (E.D.N.Y. 2003) ("prosecutors are not entitled to absolute immunity for actions outside their role as an advocate").

[14] Indeed, on the basis of the allegations in the complaint, the UPS Defendants are not liable under any of Plaintiff's theories.  Even under the most favorable interpretation possible, Plaintiff's allegations that UPS and its employees "played an active part in the initiation of the criminal proceedings" to "gain advantage" in recovering the package, (Compl. ¶ 71(a), ¶ 77), and that employees Richard Smith and George Kellin "recklessly made categorical statements to [sic] accusing [him] of violating the law" and "press[ed] police to arrest" him, (*id.* ¶ 72(c-d)), would only apply to his claim as it relates to the larceny charge.  As discussed herein, that claim fails as a matter of law, meaning that his allegation of a conspiracy involving UPS on that charge must also fail.  There are no allegations nor permissible inferences that UPS conspired to trump up a resisting arrest charge against Plaintiff.

[15] Defendants' are incorrect that the complaint fails to allege personal involvement by Scorziello.  (*Compare* Spring Valley Mem. at 7 (no basis for claims against Officer Scorziello), ECF No. 32, *with* Compl. ¶¶37-38, 71 (alleging Scorziello took part in the arrest and signed the criminal complaint against Plaintiff).)

F.3d 149, 152 (2d Cir. 2006), and *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003))

("the existence of probable cause is an absolute defense to a false arrest claim and to a malicious

prosecution claim").

But Defendants gloss over the lack of probable cause to arrest Plaintiff for resisting

arrest.  Their perfunctory analysis of Plaintiff's malicious prosecution claim, which reiterates that

probable cause existed *for the larceny charge*, (*see* Spring Valley Mem. at 10-11), overstates the

preclusive effect which would flow from a dismissal of the larceny related claim.  In a Section

1983 action alleging malicious criminal prosecution, such claims require a more individualized

analysis than related false arrest claims:

> "[w]here a defendant is arrested and prosecuted for multiple crimes,
> the fact that the arrest might have been lawful because the police
> had probable cause to believe the defendant had committed *at least
> one* of those crimes is not, in itself, sufficient to demonstrate a basis
> for his prosecution for *all* of the crimes."

*Allen v. City of N.Y.*, 480 F. Supp. 2d 689, 715 (S.D.N.Y. 2007) (emphasis added).[16]

On the basis of the allegations in the complaint, this Court "cannot say that defendants

had probable cause to prosecute plaintiff for resisting arrest," *Ahern v. City of Syracuse*, 411 F.

Supp. 2d 132, 151 (N.D.N.Y. 2006), particularly given that the state appellate court could not

discern probable cause on the face of the charging instrument.  *See also Ostroski v. Town of

Southold*, 443 F. Supp. 2d 325, 335-36 (E.D.N.Y. 2006) (discussing Second Circuit guidance on

---

[16]  To the extent Defendants are implying that "because the action, considered as a whole, was not entirely without probable cause, plaintiff's malicious prosecution claim" must be dismissed in its entirety, *see, e.g.*, *Perryman v. Vill. of Saranac Lake*, 41 A.D.3d 1080, 1082 (3d Dep't 2007), they are painting Plaintiff's § 1983 malicious prosecution claim with too broad a brush.  Plaintiff's claim is based on a criminal prosecution, and Defendants should be careful not conflate the analysis of a claim for false arrest with one for malicious prosecution. *Frederique v. Cty. of Nassau*, 168 F. Supp. 3d 455, 477 (E.D.N.Y. 2016) ("Defendants [in a malicious prosecution case] must have had probable cause for each charge for which Plaintiff was prosecuted."); *cf. Perryman*, 41 A.D.3d at 1082 (because malicious prosecution claim was based on an underlying civil disciplinary proceeding, the court explained that "the want of probable cause [needed to] be patent" and found it was not, given that "there was probable cause to support all but 3 of the 19 charges that the Board brought against [the] plaintiff[.]").

"the need to separately analyze the charges") (citing *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991)). "In most cases, the lack of probable cause—while not dispositive—'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (citation omitted). Since Plaintiff has sufficiently alleged lack of probable cause and hostility on the part of the arresting officer, the Court can reasonably infer malice.[17] *Compare id.* ("Given that [the officer] lacked probable cause to charge [the plaintiff] with resisting arrest, and given also that [was] certainly not implausible that [the officer] might have been acting out of anger for what [the plaintiff] had put him through," malice could be inferred), *with Kinzer*, 316 F.3d at 146 (cause of action could not be established where there were "undisputed material facts evidencing a clear absence of malice"), *and Mitchell v. City of N.Y.*, 841 F.3d 72, 80 (2d Cir. 2016) (claim failed *Kinzer* test where plaintiff had "not alleged or proffered any facts" to show that commencement of criminal proceedings was based on malice). This claim survives Defendants' motions to dismiss.

Nevertheless, Plaintiff's claim that the malicious prosecution was part of a conspiracy is insufficient to survive the motion to dismiss. "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal[.]" *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Here, Plaintiff's § 1983 conspiracy claim is essentially a bare cause of action, (*see* Compl. ¶¶ 44-45),

---

[17] At this juncture, the Court does not find the officers entitled to the defense of qualified immunity based on the allegations contained in the complaint. Plaintiff sufficiently demonstrates a potential violation of his constitutional right to be free from prosecutions that lack probable cause, and that right was clearly established at the time of his arrest and prosecution for resisting arrest. *See Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir. 2015); *Lowth*, 82 F.3d at 571-73 (discussing arresting officer's reasonableness in charging a plaintiff with resisting arrest).

alleging concerted action, but failing to plausibly allege an agreement between the Defendants to inflict an unconstitutional injury.[18]

None of the allegations in the complaint support the inference that UPS sought to have him arrested *for resisting arrest* rather than for alleged theft of the package.  As noted above, Plaintiff has pleaded the existence of a "possessory lien" but has not pleaded that he presented some legitimate documentation of such lien to the UPS employees, or the officers, when they demanded the incorrectly-delivered package.  On the basis of these allegations, it cannot be said that UPS sought to "inflict an unconstitutional injury" rather than see the package returned to its rightful owner.  Nor does the vague assertion that the Defendant Officers would gain a pecuniary benefit from doing UPS's "bidding" plausibly explain why UPS would seek to have Plaintiff prosecuted for resisting arrest.

Similarly, Plaintiff's bare conspiracy allegation that Jane Doe Assistant District Attorney advised the officers on how to arrest him "without cause or justification" lacks the requisite specificity.  *Cf. Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (proposed amended complaint sufficiently alleged a conspiracy to deprive plaintiff of his vehicle, of which the defendant sheriff's department was inappropriately making personal use and attempting to cover up by refusing to respond to plaintiff's request for return of the vehicle); *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (conspiracy plausibly alleged on the basis that police officers had conspired with "skinheads" to assault demonstrators by giving the "skinheads" verbal license and refusing to arrest the "skinheads" that did assault demonstrators).  Plaintiff's conspiracy

---

[18]  The Court notes that Plaintiff's failure to plead his causes of action with the required specificity may be the result of borrowing stock language from other complaints.  (*See, e.g.*, *id.* ¶ 48(c) (referencing the law of Massachusetts, which is irrelevant to this action).)

claim against Jane Doe simply does not link her alleged activities to the resisting arrest prosecution that followed.

Therefore, his conspiracy allegations must be dismissed.

*   *   *

The Second Circuit has emphasized that "[a] pro se complaint is to be read liberally" and that a "court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citations omitted).  Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But the defects in Plaintiff's complaint are largely substantive and incurable—as most of Plaintiff's claims are "untimely as a matter of law, repleading [those claims] would be futile."  *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 452 (S.D.N.Y.) (citing *Goodrich v. L.I.R.R. Co.*, 654 F.3d 190, 200 (2d Cir. 2011)), *aff'd*, 579 F. App'x 7 (2d Cir. 2014).  Thus, Plaintiff's time-barred claims must be dismissed with prejudice.

Plaintiff's only timely claims under Section 1983—for malicious prosecution related to resisting arrest and for conspiracy to accomplish the same—are similarly unsalvageable against the UPS Defendants and the Defendant District Attorney.  Therefore, those Defendants must also be dismissed from the action with prejudice.  Moreover, because the Court is unconvinced that Plaintiff could successfully replead the claims based on his alleged malicious prosecution against Mayor Delhomme or Chief Modica, they are also dismissed from the action with prejudice.  *See Woodward v. Morgenthau*, 740 F. Supp. 2d 433, 441 (S.D.N.Y. 2010).  His claim for malicious prosecution and conspiracy to maliciously prosecute against Jane Doe Assistant District Attorney is dismissed without prejudice.

21

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the complaint are GRANTED IN PART and DENIED IN PART.  Plaintiff's claims against the UPS Defendants, Defendant District Attorney Zugabie, Defendant Mayor Delhomme, and Defendant Chief Modica are dismissed with prejudice.  Plaintiff's claims against the Jane Doe Assistant District Attorney for malicious prosecution and conspiracy to maliciously prosecute are dismissed without prejudice, but any other claims against Jane Doe are dismissed with prejudice.[19]  Only Plaintiff's § 1983 claim against Officers Beltempo and Scorziello for malicious prosecution currently remains (Count XIII, as informed by Count X).

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 26, 30, and 39, and to dismiss Defendants Thomas P. Zugabie, United Parcel Service, Inc., David P. Abney, Richard Smith, George Kellin, D. Scott Davis, Demeza Delhomme, Paul Modica, John Doe, Jane Roe, and XYZ from this action.  Plaintiff shall file an amended complaint in conformance with the above on or before February 14, 2017.  The remaining Defendants shall answer or seek a pre-motion conference on any potential motion to dismiss by March 14, 2017. The parties are directed to appear for an initial pre-trial conference on March 23, 2017 at 12:15 pm.

Dated:   January 2~~~, 2017
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

---

[19]  Unknown defendant Jane Doe is referred to as Jane Doe in the complaint and Jane Roe in the caption. No pertinent allegations are made relating to Defendants John Doe or XYZ, who are also dismissed from the action.